UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JOSEPH HILL**,                                              Case No. 3:11 CV 445

        Petitioner,                            Judge Jack Zouhary

        v.                                             REPORT AND RECOMMENDATION

**WARDEN, MARION CORRECTIONAL INSTITUTION**,

        Respondent.                         Magistrate Judge James R. Knepp, II

## INTRODUCTION

Petitioner Joseph Hill, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden of the Marion Correctional Institution, filed a Return of Writ. (Doc. 10). Petitioner then filed a Traverse. (Doc. 11). The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated March 16, 2011). For the reasons discussed below, the undersigned recommends the Petition be denied and dismissed.

## BACKGROUND

<u>Factual Background and State Court Proceedings</u>

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness

applies even to factual findings made by a state court of appeals based on the state trial record. *Id.* Petitioner does not object to the state court of appeals' recitation of the facts and has not otherwise presented such clear and convincing evidence in his Petition to contravene them. (Doc. 11, at 3). The Sixth District Court of Appeals recited the facts:

> [¶ 4]   On June 11, 2009, a residence outside of Delta, Ohio, was burglarized and set on fire causing in excess of $300,00 in damages. [Petitioner] lived in close proximity to the subject home. Shortly thereafter, appellant's wife and stepson contacted authorities and conveyed their impression that appellant had been the perpetrator.
>
> [¶ 5]   Acting upon information implicating [Petitioner] that was furnished by members of his family, [Petitioner] was discovered at a hotel in nearby Holland, Ohio. Equipment stolen from the victim's detached garage was recovered. [Petitioner] conceded to breaking into the garage and stealing the recovered items but denied setting the home ablaze. Significantly, contrary to [Petitioner's] denial, [Petitioner] furnished his own personal identifiers when selling items of jewelry stolen from the master bedroom of the residence to a Swanton jeweler.
>
> [¶ 6]   On July 22, 2009, [Petitioner] was indicted on one count of breaking and entering, in violation of R.C. 2911.13(A), one count of theft, in violation of R.C. 2913.02(A), one count of burglary, in violation of R.C. 2911.12(A), one count of possession of criminal tools, in violation of R.C. 2923.24(A), and two counts of aggravated arson, in violation of R.C. 2909.02(A). [Petitioner] was determined to be indigent, not guilty pleas were entered, and defense counsel was appointed.
>
> [¶ 7]   On August 27, 2009, the matter was set for a motion to suppress hearing. Defense counsel moved to withdraw as counsel and precisely conveyed to the court a multitude of factors in support of that motion. Defense counsel stated in relevant part, "There have been accusations levied about my competency to represent him, my advocacy for him, my malpractice, my ineffective assistance of counsel. Mr. Hill and I are not able to communicate effectively anymore and I am not able to represent him adequately as is his right to have an attorney be able to do that for him. I requested certain things of Mr. Hill and he will not let me do those things."
>
> [¶ 8]   In response to his counsel's statement in support of withdrawal, appellant stated in pertinent part, "So it's not that I didn't threaten him or anything. But he clearly ineffective counsel here Your Honor. And I said to him in chambers, I said, well, if you feel that way then I'll just claim ineffective counsel." Despite the fundamental, irreconcilable breakdown in the attorney-client relationship, appellant simultaneously revealed his desire to keep the same counsel with whom he refused to cooperate and who[m] he declared to be incompetent and ineffective so that he

could, "then just claim ineffective counsel."

[¶ 9]   In light of the foregoing, the trial court granted defense counsel's motion to withdraw and appointed substitute counsel to represent [Petitioner]. On September 2, 2009, substitute counsel was present in court with [Petitioner]. Substitute counsel advised the court that [Petitioner] adamantly refused to consent to any form of a continuance to enable substitute counsel to prepare for the jury trial which was set to proceed in a few days. In conjunction with this, substitute counsel relayed to the trial court her inability to adequately prepare to represent [Petitioner] in a jury trial encompassing six felony counts with just a few days to prepare between her first coming onto the case and commencement of the jury trial. Nevertheless, [Petitioner] persisted in his refusal to waive time to enable his own counsel adequate time to prepare.

[¶ 10]  Ironically, [Petitioner] next contradicted his earlier position on his initial counsel by now stating to the court that he perceived his original counsel to be adequate. [Petitioner] stated, "Your Honor I had a perfectly competent lawyer who I was, I was happy with." [Petitioner] had repeatedly previously stated that his original counsel was ineffective and incompetent prior to that counsel's motion to withdraw being granted. The court determined and informed [Petitioner] that, under these facts and circumstances, [Petitioner's] own positions had foreclosed all possibilities other than [Petitioner] representing himself on a pro se basis with advisory counsel being furnished by the court.

[¶ 11] In a last-ditch effort to have [Petitioner] represented by counsel, the prosecutor cooperatively suggested to the court and [Petitioner] that the motion to suppress hearing could be reset to enable either substitute counsel or the original counsel to resume representation of [Petitioner]. [Petitioner] again flatly refused. [Petitioner] succinctly stated, "Objection. Yeah, we're not delaying the trial for a motion hearing." On September 8, 2010, the matter proceeded to a three day jury trial with [Petitioner] representing himself on a pro se basis with the assistance of an advisory counsel furnished by the trial court. [Petitioner] was convicted.

*State of Ohio v. Hill*, 2010 Ohio 4052, at ¶¶ 4–11 (Ohio Ct. App.); (Doc. 10-1, at 63–64).

Petitioner timely appealed. (Doc. 10-1, at 18). He asserted one assignment of error: "The trial court violated the Appellant's 6th Amendment right to counsel." (Doc. 10-1, at 28). The Sixth District Court of Appeals issued a decision affirming the judgment of the Fulton County Court of Common Pleas on August 27, 2010. *State of Ohio v. Hill*, 2010 Ohio 4052 (Ohio Ct. App.); (Doc. 10-1, at 63). The court determined Petitioner's right to counsel was not violated because "the trial

court, several attorneys appointed to the appellant, and even the prosecution itself went to great lengths to preserve [Petitioner's] right to defense counsel." *Hill*, 2010 Ohio 4052, at ¶ 13; (Doc. 10-1, at 64). Petitioner then filed a timely appeal to the Ohio Supreme Court. (Doc. 10-1, at 66–67). In his memorandum in support of jurisdiction, he presented two propositions of law:

> Proposition of Law No. I:
> A criminal defendant cannot waive counsel by implication. Any waiver must be affirmative, on the record, and in writing.

> Proposition of Law No. II:
> If a defendant may waive counsel by implication, such a waiver must include a colloquy in which the trial court 'rigorously' 'warn[s] of the pitfalls of proceeding to trial without counsel[.]' The record must establish that the defendant is 'aware of the dangers and disadvantages of self-representation[.]'

(Doc. 10-1, at 70) (citations omitted). On January 19, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 10-1, at 113).

Federal Habeas Corpus

Petitioner filed the instant petition on March 3, 2011. (Doc. 1). He asserts one ground for relief:

> Petitioner was denied his right to counsel when the trial court held that Petitioner waived counsel merely by stating demands that were inconsistent with maintaining counsel and without determinating, on the record, that the waiver of counsel was voluntarily, knowingly, and intelligently made, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. 1, at 9).

## STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state

courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A legal doctrine is not "clearly established federal law as determined by the Supreme Court" unless it is based on "holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Id.* at 405. The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

## ANALYSIS

Enshrined in the Sixth Amendment, the right to counsel is fundamental to our criminal system. The right to effective assistance of counsel applies at all "critical stages" of the criminal process. *Maine v. Moulton*, 474 U.S. 159, 170 (1985). The "vital" need for a lawyer's advice and aid even applies during the pretrial phase of prosecution. *Estelle v. Smith*, 451 U.S. 454, 469 (1981).

This fundamental "right to be furnished counsel does not depend on a request" by the defendant. *Carnley v. Cochran*, 369 U.S. 506, 513 (1962). Nonetheless, an indigent criminal defendant does not have the right to appointed counsel of his choice. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Furthermore, the Sixth Amendment guarantees the right to waive counsel and represent oneself:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . . Although not stated in so many words, the right to self-representation – to make one's own defense personally – is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California*, 422 U.S. 806, 819–820 (1975).

Waivers of the right to counsel must be made voluntarily, knowingly, and intelligently. *Johnson v. Zerbst*, 304 U.S. 457, 464 (1938). But this standard does not require an express verbal or written waiver. When the Sixth Amendment "is being used not as a shield but as a sword", courts "have not hesitated to find waiver through conduct." *Sullivan v. Pitcher*, 82 F. App'x 162, 165–166 (6th Cir. 2003).

In this case, as in *Jones v. Jamrod*, 414 F.3d 585 (6th Cir. 2005), the universe of clearly established federal law as determined by the Supreme Court implicated by the Petition is narrow. *See id.* at 591. Petitioner refers the Court to *Iowa v. Tovar*, 541 U.S. 77 (2004), and *Faretta v. California*, 422 U.S. 806 (1975), arguing the Supreme Court has held "that any waiver [of the right to counsel] must include a colloquy in which the trial court 'rigorously' 'warn[ed] of the pitfalls of proceeding to trial without counsel[.]'" (Doc. 11, at 4, 8). However, as explained below, the Court is persuaded that the state court decisions in this case were not contrary to, nor unreasonable applications of, *Tovar, Faretta*, or any other Supreme Court decision.

In *Faretta*, the Court spoke of the need for admonishments to a prospective pro se defendant:

> Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

*Faretta*, 422 U.S. at 835–836 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

The Court reiterated this thought in *Patterson v. Illinois*, 487 U.S. 285 (1987):

> [R]ecognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial. . . . [W]e have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is 'knowing' when he is made aware of these basic facts.

*Id.* at 299. Lower courts interpreted this line of cases to require some sort of so-called *Faretta* warnings before a knowing and intelligent waiver of the right to counsel can be found. *See, e.g., United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004). However, the Sixth Circuit has opined that the right to be given *Faretta* warnings, though a commendable practice, has not been clearly established by the Supreme Court. *Swiger v. Brown*, 86 F. App'x 877, 882 (6th Cir. 2004).

The Court more recently explained specific warnings are not necessary to effectuate a valid waiver of counsel, saying:

> '[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it.' . . . [T]he information a defendant must have to waive counsel intelligently will 'depend, in each case, upon the particular facts and circumstances surrounding the case'.

*Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002);

7

*Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

The Court in *Tovar* carefully explained that the Sixth Amendment does not require scripted admonitions before there can be a knowing and intelligent waiver of the right to counsel. *Tovar*, 541 U.S. at 89. The Court also went so far as to suggest that in some cases, scripted admonitions may confuse or mislead a defendant more than inform him; a defendant may misconstrue such warnings as veiled suggestions. *Id.* at 93. In essence, *Tovar* stands for the proposition that a court is "not required to warn a defendant who wish[es] to represent himself about some of the specific dangers of waiving an independent opinion as to the viability of the prosecutor's case and potential defenses." *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). After *Tovar*, it is clearly established that "a script for waiver colloquies" is not required; instead, the analysis rests "on the particular facts of the case." *United States v. Kleinpaste*, 124 F. App'x 134, 137 (3rd Cir. 2005).

The particular facts in *Tovar* are rather different from the case at hand. In *Tovar*, the defendant pled guilty to the charges against him without counsel present. *Tovar*, 541 U.S. at 81. After being arrested for driving under the influence of alcohol (OWI), the defendant waived application for court-appointed counsel at his initial appearance. *Id.* At his arraignment, the trial judge asked him whether he wanted to represent himself at the hearing, and the defendant said, "Yes, sir." *Id.* The trial court engaged the defendant in a plea colloquy, informing him of his trial rights and the possible penalties he faced. *Id.* at 83–84. The defendant then reaffirmed his guilty plea. *Id.* At his sentencing hearing, the defendant again expressed a desire to represent himself when asked. *Id.* The judge went through a colloquy similar to that at his change of plea hearing, after which a sentence was imposed. *Id.* at 84–85. Later on, the defendant was convicted on two more OWI charges. *Id.* By Iowa statute, a third OWI offense was a more serious crime. *Id.* at 85. The defendant

moved for an adjudication that his first OWI conviction could not be used to enhance his third OWI offense arguing that his waiver of counsel at the first arraignment not was voluntary, knowing, and intelligent due to the trial court's failure to advise him of the dangers and disadvantages of self-representation. *Id.* The Iowa Supreme Court agreed with Tovar, noting the dangers of pleading guilty pro se are different from the dangers of proceeding pro se at a jury trial. *Id.* at 86; *State v. Tovar*, 656 N.W. 2d 112, 119 (Iowa 2003). The Supreme Court reversed:

> We hold that neither warning is mandated by the Sixth Amendment. The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of guilty plea.

*Tovar*, 541 U.S. at 81.

*Tovar* cannot be the basis for habeas relief here first and foremost because *Tovar* was concerned with what a defendant must be told before pleading guilty without counsel. The ultimate thrust of *Tovar* is that states are free to adopt guides for accepting uncounseled pleas they deem useful to ensure a voluntary, knowing, and intelligent waiver. *Id.* at 94. Here, Petitioner did not plead guilty. Rather, this is a case about waiving the right to counsel at a jury trial. While this difference might not otherwise have substantial import, it has profound impact given the standard for habeas relief under AEDPA. That is, the material difference in facts between *Tovar* and Petitioner's case precludes one of the two ways a state court's decision could be contrary to clearly established federal law – by involving indistinguishable facts but nonetheless arriving at a substantially different result – at least with respect to *Tovar*. *See Williams*, 529 U.S. at 405–406.

The other way of being contrary to *Tovar* – by arriving at a holding that contradicts it – is precluded by the fact *Tovar* did not hold any sort of specific colloquy was unacceptable; instead, it held that a certain prescribed formula for a colloquy is not required. *Tovar,* 541 U.S. at 81. To

9

contradict such a holding, the state courts would have needed to hold that the Sixth Amendment *does* require a certain scripted waiver colloquy – a ruling clearly not ever made by the state courts in this case.

Second, another way habeas relief could be granted based on *Tovar* would be if the state courts had unreasonably applied it to the facts of Petitioner's case, but they did not. *See Williams*, 529 U.S. at 409. Though it is difficult to imagine what an unreasonable application of *Tovar*'s unrestrictive holding would be, what happened here certainly does not meet that threshold. The trial court here at least engaged in some sort of questioning to make sure Petitioner had his eyes wide open and knew what he was getting himself into. Specifically, the court asked Petitioner whether he understood that refusing to delay his trial would force him to represent himself, and Petitioner responded that he understood, even though he did not want to proceed pro se. (Doc. 10-1, at 118). This exchange shows Petitioner knew the consequences of his refusal to delay the trial. The holding of *Tovar* – that the Sixth Amendment does not compel the specific admonitions of risking defenses being overlooked and losing the opportunity to obtain an independent opinion on the case – does not suggest this colloquy is insufficient, let alone so blatantly insufficient as to have been an objectively unreasonable application thereof. This is especially true in light of the fact *Tovar* encouraged the states to make their own guides on waiver colloquies. *Tovar*, 541 U.S. at 94. Furthermore, the rule from *Tovar* implies a relaxation of *Faretta*'s inquiry language. The Court said, "[W]e have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Id.* at 88. The Court referred to *Faretta* as "instructive". *Id.* The ultimate point is that what a defendant must be told depends on "the particular facts and circumstances surrounding the case", fully consistent with the Sixth Circuit's dicta that a right to *Faretta* warnings

10

has not been clearly established by the Supreme Court. *Johnson*, 304 U.S. at 464; *Swiger*, 86 F. App'x at 882. Therefore, *Faretta* and its progeny do not supply a foundation for habeas relief in this case.

Conversely, the Court observes that this case is analogous to *King v. Bobby*, 433 F.3d 483 (6th Cir. 2006), even though *King* preceded *Tovar*. In *King*, the defendant did not straightforwardly assert his right to represent himself, "and even told the trial court twice that he did not wish to represent himself." *Id.* at 492. The defendant repeatedly assured the trial court he would retain counsel but then failed to do so, causing a significant delay. *Id.* at 485. When he finally retained counsel, the court advised that it would not entertain a motion to withdraw by the attorney for failure to be paid. *Id.* Subsequently, the attorney moved to withdraw after being asked to perform unethical acts. *Id.* at 486. The defendant moved for a continuance, and at a hearing on said motion, the trial judge said he was firmly convinced the defendant "will never hire and keep a lawyer". *Id.* The judge then denied the motion for a continuance. *Id.* As a result, the defendant reached a plea agreement and pled guilty without counsel. *Id.* at 487.

When the defendant in *King* filed a habeas petition, arguing he was not given the proper *Faretta* warnings before waiving his right to counsel, the district court relied on *Tovar* – though improperly because *Tovar* had been decided after the state court decisions in question – to deny relief. *Id.* at 490. *Tovar* weakened the notion that a rigid colloquy was required by *Faretta*, but even without considering this decision, the Sixth Circuit affirmed saying that "when a defendant waives his right to counsel through dilatory conduct, the Constitution does not require an extended discussion about the repercussion of the waiver." *Id.* at 493. The court favorably discussed *United States v. Oreye*, 263 F.3d 669 (7th Cir. 2001), in which the Seventh Circuit similarly found a valid

11

waiver of the right to counsel by the defendant's conduct – that is, refusing options that would allow for the retention of counsel – despite not saying he wished to proceed pro se. *Id.* at 670.

Here, Petitioner waived his right to counsel through his own conduct. He caused his appointed counsel to withdraw threatening he would otherwise "just claim ineffective assistance" (Doc. 10-1, at 117), and then refused to allow subsequent appointed counsel adequate time to prepare for trial (Doc. 10-1, at 123). His actions were inconsistent with retaining counsel. In essence, Petitioner used his right to counsel as a sword by saying he would appeal his conviction based on a denial of his right to effective counsel unless the court allowed his counsel to withdraw. Either he would be denied counsel and then could argue he had no counsel, or he would be given counsel he alleged was ineffective – also a denial of his Sixth Amendment right to counsel, if true. This was not an attempt to manipulate the trial court into delaying the trial, because Petitioner expressly refused to delay the trial (Doc. 10-1, at 126), but it was an attempt to use the right to counsel as a sword to prevent his trial from being constitutionally sound. The Sixth Amendment does not bestow such a right. Because of his conduct, no extended discussion about the repercussions of waiving his right to counsel was required. *See King*, 433 F.3d at 493. Petitioner's Sixth Amendment rights were not violated.

## CONCLUSION AND RECOMMENDATION

Petitioner's ground for relief fails because (1) a right to specific *Faretta* warnings before effectively waiving counsel has not been clearly established by the Supreme Court, (2) no extended discussion on the repercussions of waiving counsel was required here anyway because Petitioner waived his right to counsel by his own conduct inconsistent with retaining counsel, and (3) in any

event, the colloquy that took place in this case did not necessarily run afoul of the recommended *Faretta* warnings in light of *Tovar*. Thus, the state courts did not violate clearly established federal law. The undersigned therefore recommends the Petition be denied and dismissed.

s/James R. Knepp, II  
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).