IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph Hill,                               Case No. 3:11 CV 445

             Petitioner,            MEMORANDUM OPINION
                                              AND ORDER
         -vs-
                                              JUDGE JACK ZOUHARY

Maggie Beightler, Warden, et al.,

             Respondent.

## INTRODUCTION

"You've made your bed, now lie in it," is an expression commonly used as a response to people who complain about problems they have brought on themselves. Petitioner Joseph Hill had his counsel dismissed as ineffective less than two weeks before his state criminal trial. New counsel was appointed, but when Petitioner refused to continue the trial date to allow his new counsel to "get up to speed" and prepare, new counsel withdrew. Still refusing to continue the trial, Petitioner elected to proceed *pro se*.

Petitioner now complains, in his Writ of Habeas Corpus under 28 U.S.C. § 2254, that he was denied the right to counsel (Doc. 1 at 9). This matter was referred to the Magistrate Judge, whose Report and Recommendation ("R&R") recommended this Court deny the Petition (Doc. 14). Petitioner timely objected (Doc. 19). For reasons that follow, this Court affirms.

## BACKGROUND

On July 20, 2009, Petitioner was indicted on one count each of breaking and entering, theft, burglary, and possessing criminal tools, and two counts of aggravated arson (Doc. 10-1 at 3–5).

Petitioner pled not guilty and defense counsel was appointed (Doc. 10-1 at 63). Trial was set for September 8, 2009 (Doc. 10-1 at 118).

Petitioner filed a Motion to Suppress on August 14, 2009 and the hearing was set for August 27, 2009 (Doc. 10-1 at 6 & 10). However, instead of arguing the Motion, Petitioner's counsel moved to withdraw, stating (Doc. 10-1 at 116):

> There have been accusations levied about my competency to represent him, my advocacy for him, my malpractice, my ineffective assistance of counsel. [Petitioner] and I are not able to communicate effectively anymore . . . . I have requested certain things of [Petitioner] and he will not let me do those things. . . . I have asked [Petitioner] to give me some more time to prepare for the case. He does not want to do that. . . . I am asking the Court to permit me to withdraw from the case, and appoint substitute counsel for [Petitioner].

Petitioner's response was mixed: he desired to retain his counsel, though admitted there had been a breakdown in communication and that he planned to appeal, if convicted, on the basis of ineffective assistance of counsel (Doc. 10-1 at 117–18).

The judge found Petitioner's complaints amounted to a *de facto* discharge of his attorney (Doc. 10-1 at 12). Nevertheless, the judge initially denied defense counsel's motion to withdraw because trial was set to begin in two weeks and Petitioner's refusal to continue the trial date would likely result in Petitioner proceeding *pro se* (Doc. 10-1 at 118). However, after a brief sidebar conference, and at the behest of the prosecution, the judge reversed course, granted the motion to withdraw, stayed the trial, and appointed new counsel (Doc. 10-1 at 120).

On September 2, 2009, Petitioner's new counsel also withdrew because Petitioner still refused to continue the trial and there was not adequate time to prepare. The Court explained (Doc. 10-1 at 123):

> [T]he problem is [] that you are up against the time. I mean we can not extend the trial date because it must be tried within ninety days. We are in the late eighties at this point.[1]

Petitioner reiterated that he never wanted his original counsel to be withdrawn and that now he was being forced to go to trial without a lawyer (Doc. 10-1 at 124). At this time Petitioner decided to withdraw his Motion to Suppress, determining it was "pretty much irrelevant" (Doc. 10-1 at 125). Petitioner stated (Doc. 10-1 at 126):

> I don't have time to prepare a motion myself. I don't have the legal knowledge or experience to prepare a motion myself. My witnesses, I don't know how to go about even [getting] my witnesses in three days or four days. There would be, there would be about six witnesses that I told, that I, well [defense counsel] and I had discussed. There were six witnesses that were supposed to be here for the Motion Hearing on behalf of me. . . . He didn't do any of it sir.

The prosecution suggested delaying the Motion hearing to give Petitioner more time to prepare, but Petitioner objected stating "we're not delaying the trial for a Motion Hearing" (Doc. 10-1 at 126).

Petitioner proceeded to trial *pro se* on September 8, 2012, with standby counsel present to provide technical assistance if requested (Doc 10-1 at 13). The prosecution presented its case and Petitioner rested without producing any evidence (Doc. 10-1 at 13). Petitioner was convicted on five of six counts and sentenced to 138 months in prison (Doc. 10-1 at 14–16). Petitioner timely appealed,

---

[1] Ohio Revised Code § 2945.71 requires a person charged with a felony to be tried within 90 days if he or she is held in jail pending trial. It is unclear from the record exactly when Petitioner was arrested, but assuming Petitioner was arrested on June 11, 2009, the day the crimes underlying his conviction were committed, he had been in prison 83 days. However, his Motion to Suppress, filed on August 14, tolled his time for trial at 63 days. R.C. § 2945.72(E). Petitioner's time for trial did not begin to run again until he withdrew his Motion to Suppress on September 2, 2009. At that point, new counsel had 27 days to prepare for trial, not less than a few days as the record suggests. Arguably, Petitioner's time still did not begin because the statute also tolls for "delay necessitated by the accused's lack of counsel . . . ." R.C. § 2945.72(C). Whatever the remaining time, Petitioner nonetheless refused to continue the September 8, 2009 trial date.

3

claiming the trial court violated his Sixth Amendment right to counsel (Doc. 10-1 at 28). The appellate court affirmed the trial court, stating:

> We have carefully reviewed and considered the record of evidence in this matter. The record clearly and unambiguously establishes that the trial court, several attorneys appointed to [Petitioner], and even the prosecution itself went to great lengths to preserve [Petitioner's] right to defense counsel. However, [Petitioner] repeatedly and adamantly took positions with respect to his counsel and with respect to waiver of time that had been clearly explained to him would preclude representation other than on a pro se basis with the assistance of advisory counsel.
>
> [Petitioner] was clearly instructed by the trial court at the genesis of this scenario of the ramifications of his actions. When his counsel asked to withdraw and conveyed [Petitioner's] refusal to waive time so as to enable trial preparation, the trial court plainly indicated to [Petitioner] that this position would ultimately result in pro se representation. [Petitioner] stated, "I understand that sir." Despite knowing the consequences, [Petitioner] persisted in precluding representation by substitute counsel on the same exact basis of time waiver so as to preclude any ability of trial counsel to prepare the defense of [Petitioner].
>
> Significantly, even when the prosecutor himself offered a final solution that would enable defense counsel representation of [Petitioner], [Petitioner] objected on the record and once again refused any continuance of the looming trial date. As such, the record clearly demonstrates that the trial court was left with no alternative by [Petitioner] himself other than to proceed on a pro se basis with advisory counsel.
>
> There is absolutely nothing in the record establishing that [Petitioner] was not fully informed of the consequences of his actions or failed to comprehend the consequences of his actions. On the contrary, the record possesses ample evidence of the trial court, multiple appointed counsel, and [the prosecution] all engaging in every effort to enable [Petitioner] to avail himself of his Sixth Amendment right to defense counsel.
>
> The record shows that despite these efforts, [Petitioner] elected his countervailing right. [Petitioner's] uncompromising objection to any postponement of the trial date to enable trial counsel to prepare to represent him foreclosed any other option. The record clearly reflects that [Petitioner] had been informed that this position foreclosed any other option but pro se representation. [Petitioner] made up his mind and again objected to any continuance.
>
> The record contains no evidence or indicia in support of the notion that [Petitioner] was denied the Sixth Amendment right to counsel. [Petitioner] took stances that disposed of that right. Wherefore, we find [Petitioner's] sole assignment of error not well-taken.

*State of Ohio v. Hill*, 2010 WL 3377762 at *6–8 (Ohio Ct. App. 2010).

Petitioner timely appealed to the Ohio Supreme Court, which denied his appeal as not involving any substantial constitutional question (Doc. 10-1 at 113).  Petitioner then filed his Writ in this Court.

## ANALYSIS

The R&R concluded the trial court reasonably applied both federal law and the facts (Doc. 14 at 9–10 & 12–13) (applying 28 U.S.C. § 2254(d)).  Petitioner objected on two grounds (Doc. 19). First, the R&R applied the wrong standard to Petitioner's waiver of counsel.  Second, the R&R incorrectly found Petitioner's behavior amounted to a wavier of counsel.  This Court reviews *de novo* those portions of the R&R to which objections are made.  *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (quoting 28 U.S.C. § 636(b)(1)(C)).

**The R&R Applied the Correct Standard**

Waivers of the right to counsel must be made voluntarily, knowingly, and intelligently. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  To meet this standard, courts often warn defendants of the hazards of proceeding to trial without counsel -- the so-called *"Faretta* warnings." *See Faretta v. California*, 422 U.S. 806 (1975).

Petitioner contends the R&R misapplied *Iowa v. Tovar*, 541 U.S. 77 (2004), in finding his waiver of counsel was voluntary, knowing, and intelligent.  He argues *Tovar* requires "a substantially more 'rigorous' standard for waiver of counsel before the trial than before a guilty plea" (Doc. 19 at 1). According to Petitioner, the R&R's application of *Tovar* was in violation of the clearly established Supreme Court law.  While it is true the Supreme Court imposes "the most rigorous restrictions on information that must be conveyed to a defendant . . . before permitting him to waive his right to

5

counsel at trial," *Patterson v. Illinois*, 487 U.S. 285, 298 (1988), it is also true "the information a defendant must have to waive counsel intelligently will depend upon the particular facts and circumstances in each case." *Tovar*, 541 U.S. at 79.

Given the uncontradicted facts of this case, there was no unreasonable application, or violation, of clearly established law. First, as the R&R correctly points out, the right to be given *Faretta* warnings is not clearly established. *See Swiger v. Brown*, 86 Fed. App'x 877, 882 (6th Cir. 2004). Second, Petitioner proceeded to trial *pro se* with his "eyes open" and his waiver of counsel was knowing, voluntary, and intelligent. *Id.* He knew the dangers of proceeding *pro se* and actually told the court on September 2, 2009 that having an attorney would have helped procure witnesses and prepare motions before trial. Despite that knowledge, Petitioner still waived counsel.

**The R&R Correctly Found Petitioner's Conduct Waived Counsel**

Petitioner contends "[n]o language of the United States Supreme Court implies that a different *Faretta* standard applies when a defendant waives counsel through conduct as opposed to through an express request." That premise, while possibly true, is irrelevant because, under AEDPA, this Court is only concerned with the narrow and clear law of what the Supreme Court *has* said, not the universe of implication to be teased from Supreme Court silence. What has been said, as described above, is that a defendant's valid waiver depends upon the facts and circumstances of the particular case. *See Tovar*, 541 U.S. at 79.

Petitioner's argument then is reduced to whether, based on his conduct, it was unreasonable for the state court to determine he validly waived his right to counsel. As the R&R indicates, the answer is no. Petitioner was attempting to manipulate the system and even though he asserted that he did not wish to proceed *pro se*, he also asserted he did not want counsel and wanted to keep the

6

trial date. It was not contrary to clearly established law, or an unreasonable application of the facts, for the state court to construe his conduct as a valid waiver. *See, e.g.*, *King v. Bobby*, 433 F.3d 483, 492–93 (6th Cir. 2006) (holding defendant's continued rejection of attorneys amounted to a choice to proceed *pro se*); *Sullivan v. Pitcher*, 82 Fed. App'x 162, 165–66 (6th Cir. 2003) ("[W]hen all the evidence supports the conclusion that the Sixth Amendment is being used not as a shield but as a sword [] courts have not hesitated to find waiver through conduct."); *United States v. Oreye*, 263 F.3d 669, 671 (7th Cir. 2001) ("A defendant has no right to indefinite delays while he tries on new lawyers . . . .").

Here, Petitioner threatened his counsel by claiming he was ineffective, which resulted in the appointment of new counsel. Petitioner then refused to continue the trial date, making it impossible for new counsel to effectively represent him. The court properly construed Petitioner's conduct as a valid waiver, because he refused to give appointed counsel time to prepare, which effectively rejected that counsel -- and for that matter any future counsel. *See Bobby*, 433 F.3d at 492–93. The court had no choice but to allow Petitioner to proceed *pro se*. The record discussion was sufficient to support his waiver of counsel.

## CONCLUSION

For the foregoing reasons, this Court adopts the reasoning in the R&R. Petitioner's objections are not well-taken and the Petition is denied. Petitioner cannot make a substantial showing of the denial of a constitutional right and there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.

                               s/ *Jack Zouhary*
                               JACK ZOUHARY
                               U. S. DISTRICT JUDGE

                               April 24, 2012